United States District Court
Southern District of Texas
**ENTERED**
October 12, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| Margarita Martinez, et al., *Plaintiffs*, | § § § § | |
| v. | § § | Civil Action M-23-205 |
| Hartford Life and Accident Insurance Company, et al., *Defendants*. | § § § § | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 4. Pending before the court is Plaintiffs' Motion to Remand, ECF No. 3. The court has considered the motion, the responses, and the applicable law. For the reasons stated below, the court recommends that Defendant IBC Bank be **DISMISSED** and that Plaintiffs' Motion to Remand, ECF No. 3, be **DENIED**.

### 1. *Factual and Procedural Background*

According to Plaintiffs' state court petition, "On or about March of 2014, Decedent Guadalupe Rodriguez Saguirre[] was sold an accidental [death] life insurance policy by John Doe, as an agent for Defendant IBC Bank." Pls.' Orig. Pet., ECF No. 1-4 at 6. Plaintiffs are the named beneficiaries under the insurance policy. *Id.* at 4. Rodriguez Saguirre paid all quarterly premiums. *Id.* at 6. On July 27, 2020, Rodriguez Saguirre fell and was hospitalized. *Id.* at 6. Rodriguez Saguirre was discharged from the hospital on August 11, 2020, but sometime thereafter, he suffered a fatal stroke that Plaintiffs allege was caused by his fall. *Id.* Plaintiffs filed their claim for benefits under the policy, but Minnesota Life Insurance Company (Minnesota Life) denied the claim based on its

determination that Rodriguez Saguirre's death was not accidental. *Id.* at 6. Plaintiffs now sue for breach of contract, violations of the Deceptive Trade Practices Act, and "additional causes of action" that the court reads to be claims for fraudulent misrepresentation and fraudulent inducement. *Id.* at 7–11.

Plaintiffs filed this lawsuit in state court against Defendants Hartford Life and Accident Insurance Company (Hartford Life); Minnesota Life; TransAmerica Life Insurance Company; IBC Bank; and John Doe. ECF No. 1-4 at 5. Defendants jointly removed this case based on diversity jurisdiction. ECF No. 1. Defendants argue that, although IBC Bank and Doe[1] are citizens of Texas, they were improperly joined, and their citizenship is therefore irrelevant for jurisdictional purposes. *Id.* at 2. Defendants argue that Plaintiffs "[do] not allege any specific actions or omissions by IBC or Doe . . . [and] instead, Plaintiffs simply recite the elements of their causes of action generically against *all Defendants* in conclusory fashion." *Id.* at 3.

In their motion to remand, Plaintiffs argue that diversity of citizenship is absent because IBC Bank is a Texas corporation with its principal place of business in Texas. ECF No. 3 ¶ 5. Defendants' response includes, among other exhibits, an insurance certificate issued to Rodriguez Saguirre by Minnesota Life with an effective date of April 1, 2018 (the "2018 Policy"). ECF No. 7-4 at 3–15. Defendants argue that the 2018 Policy was in effect at the time of Rodriguez Saguirre's death, that IBC Bank was not a party to the insurance contract, and that IBC was not responsible for

---

[1] Doe has not been identified or served. Doe's citizenship is disregarded for jurisdictional purposes. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded.").

2

evaluating Plaintiffs' claim or paying Plaintiffs any insurance benefits. *Id.* at 10–11; ECF No. 15 at 5, 10.

Plaintiffs attached to their reply an insurance certificate issued to Rodriguez Saguirre by Hartford Life with an effective date of April 1, 2014 (the "2014 Policy"). ECF No. 13-1. This appears to be the initial policy Rodriguez Saguirre purchased in 2014 as described in Plaintiffs' state court petition. ECF No. 1-4 at 6. Plaintiffs argue that the 2014 Policy shows that IBC Bank owes Plaintiffs $1,000 in the event of a covered loss. ECF No. 13 at 3.

### 2. *Legal Standards*

A defendant may remove a civil action from state court if the federal courts would have had original jurisdiction had the action been filed in federal court. 28 U.S.C. § 1441(a); *In re Deepwater Horizon*, 745 F.3d 157, 162 (5th Cir. 2014). The defendant "has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). "[O]perative facts and pleadings are evaluated at the time of removal." *In re Deepwater Horizon*, 745 F.3d at 163.

Federal district courts have original jurisdiction over civil actions between citizens of different States, in which the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Complete diversity "means that 'all persons on one side of the controversy [must] be citizens of different states than all persons on the other side.'" *Smith v. Toyota Motor Corp.*, 978 F.3d 280, 281 (5th Cir. 2020) (alteration in original) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). "[D]iversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385, 386–87 (5th Cir. 2018) (emphasis omitted) (quoting *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996)).

The case may not be removed based on diversity of citizenship, however, "if any of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). The citizenship of a defendant improperly joined to defeat the court's diversity jurisdiction is disregarded; that defendant is dismissed from the case; and the court exercises jurisdiction over the remaining defendant. *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (citing *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185-186 (1907); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572–73 (5th Cir. 2004) (en banc)). The removing party bears the "heavy burden" of proving improper joinder. *Smallwood*, 385 F.3d at 576. Improper joinder may be shown by: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood*, 385 F.3d at 573. Defendants argue that the second test applies here. ECF No. 7 at 6.

The inquiry for the court is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. In making that inquiry, the court normally engages in a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* If, however, the plaintiff can survive a Rule 12(b)(6)-type challenge but has misstated or omitted discrete facts that would change the result, the court may pierce the pleadings and engage in a summary-judgment-type analysis. *Id.*

4

"It is well-established, of course, that the Rule 12(b)(6) analysis necessarily incorporates the *federal* pleading standard articulated in *Bell Atl. Corp. v. Twombly*[, 550 U.S. 544 (2007).]" *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp. Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016). Under the federal pleading standard, the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts accept "all well-pleaded facts as true" and "view[] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

When considering a Rule 12(b)(6) motion, courts have discretion to consider "any documents attached to the complaint[] and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Such documents are considered part of the pleadings. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

If the court, in its discretion, undertakes a summary judgment type analysis, the improper joinder standard "is not the

summary judgment standard in which an absence in the plaintiff's proof alone can be fatal." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765–66 (5th Cir. 2016) (citation omitted). Rather, the burden remains with the defendant to demonstrate that there is no possibility of recovery by the plaintiff against the in-state defendant. *Id.* (quoting *Smallwood*, 385 F.3d at 573).

### 3. Analysis

Defendants, in removing the case, carry the burden to establish diversity jurisdiction. *Frye*, 953 F.3d at 293. The amount in controversy is not at issue, so Defendants must show that Plaintiffs failed to establish a cause of action against IBC Bank and that, consequently, its citizenship should be disregarded under the doctrine of improper joinder.

### A. Breach of Contract

The court first must determine whether there is a reasonable basis to predict that Plaintiffs might recover from IBC Bank on their breach of contract claim. *See Smallwood*, 385 F.3d at 573. Under a traditional Rule 12(b)(6) analysis, the court has discretion to consider documents that are central to the claim and referenced in the complaint. *Causey*, 394 F.3d at 288. Accordingly, the court considers as part of the pleadings the 2014 Policy and the 2018 Policy.

The 2014 Policy named Hartford Life as the insurer and IBC Bank as a "participating financial organization." ECF No. 13-1 at 3. The parties appear to agree that the 2014 Policy expired and Rodriguez Saguirre's coverage was continued under the 2018 Policy, which was in effect on the date of his death. It is therefore not clear how IBC could be liable for breach of contract under the 2014 Policy. In any event, IBC's role under the 2014 Policy was to pay the premium on the first $1,000 of coverage. ECF No. 13-1 at 1, 3. There is no allegation that IBC failed to do that. The 2014

6

policy states that "We will pay any benefit due as soon as possible after we receive proof of loss and other forms that may be necessary to adjudicate the claim." ECF No. 13-1 at 5. The definitions section states that "**We, us** or **our** means the insurance company named on the face page." ECF *Id.* at 3 (boldface in original). The only insurance company named throughout the document is Hartford Life. *Id.* at 3–6. IBC Bank was not obligated to pay any insurance benefit. There is no plausible basis on which IBC could be held liable for breach of contract under the 2014 Policy.

The 2018 Policy is similar to the 2014 policy. It names Minnesota Life Insurance Company as the insurer and IBC Bank as the "plan sponsor." ECF No. 7-4 at 3. "[P]lan sponsor" is defined as "[t]he entity named on your application who has agreed to participate in the Financial Services Association (FSA)." *Id.* at 12. As with the 2014 Policy, the 2018 Policy states "We will pay the accidental death or dismemberment benefit upon receipt of written proof satisfactory to us that you sustained an accidental injury resulting in death or dismemberment[.]" ECF No. 7-4 at 12. The 2018 Policy defines "we, our, us" as "Minnesota Life Insurance Company." *Id.* Again, IBC Bank was not obligated to pay any insurance benefit.

There is no reasonable basis to predict that Plaintiffs might recover against IBC Bank for breach of contract.

### B. *Deceptive Trade Practices Act and the Additional Causes of Action*

Plaintiffs' state court petition asserts claims for violations of the Deceptive Trade Practices Act and "Additional Causes of Action[.]" ECF No. 1-4 at 7, 10–11 (all-caps omitted). Each paragraph in these sections begins with a conclusory statement asserting that, for example: (1) "Defendants' conduct represented acts or practices defined as unfair or deceptive under Section

7

541.052, Texas Insurance Code"; (2) "Defendants' conduct represented acts or practices that are unfair settlement practices under Section 541.060, Texas Insurance Code"; (3) "Defendant made false representations of material facts to Plaintiff"; and (4) "Defendant concealed or failed to disclose material facts that were within Defendant's knowledge[.]" *Id.* at 7–10. Some of the subparagraphs then define the relevant insurance code section with its elements. *Id.* at 7–9.

Absent from the state court petition are any facts supporting the alleged causes of action. There are no facts identifying any particular act or omission by any particular Defendant that would form the basis for any violation of any statute or other common law cause of action. There are no facts showing when Defendants committed any act, what the precise conduct was, what representations were made, what material facts were concealed, or even what insurance policies are at issue. Plaintiffs provided nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. This does not suffice. *See id.* Accordingly, Plaintiffs failed to state a claim under the Deceptive Trade Practices Act or the additional causes of action against IBC Bank. Therefore, Plaintiffs have no possibility of recovery on any claim asserted against IBC.

### 4. Conclusion

Having found that Plaintiffs have no possibility of recovery against IBC Bank for any of the claims asserted, the court concludes that IBC Bank was improperly joined. IBC Bank's citizenship is disregarded, and the court recommends that IBC Bank be **DISMISSED** from the lawsuit. *See Flagg*, 819 F.3d at 136. The court therefore recommends that Plaintiff's Motion to Remand, ECF No. 3, be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on October 12, 2023.

_____
Peter Bray
United States Magistrate Judge